Nicholson, C. J.,
delivered the opinion of the Court.
The question of law in this ease arises upon the following facts:
In April, 1862, Barnett Graham endorsed two notes, amounting to about $5,000, payable in four months, at the branch of the Union Bank at Memphis. The notes were not paid at maturity, nor -was demand of payment made and notice of dishonor given to Graham, as endorser. In July, 1865, the demand was made at the bank, the notes protested for non-payment, and notice immediately given to Graham.
The Cashier of the bank- testified as follows:
“ Mr. Graham gave me his promise to pay these notes, both before and after such protest. I first called his attention to them and other notes in May, 1865, at which time he paid two notes of $5,000, each, made by himself. In regard to the notes on which he was indorser, and which had been discounted for his benefit, he said there was at least a doubt about his being legally bound under the circumstances of failure to protest, etc., but that he felt morally bound 'and under obligation to pay in every instance when the paper had been discounted for his benefit, and on which he was first endorser, and that he did not propose to raise any question of his legal liability; that all he asked was a reasonable time in which to raise the money, and if this was granted him he *443 would pay. His proposition was agreed to by witness on the part of the bank, and' at the time of his death he had paid out about a dozen notes similarly situated — all except the two sued on. We had repeated conversations through a period of twelve months, and there was no doubt or misunderstanding between us as to his promising to pay them without regard to protest, notice, etc. I had repeated assurances from him of this, both before and after protest and notice. His promises to pay were made with a full knowledge of all the facts connected with them, and in the face of an expressed doubt on his part of his being legally liable. He spoke of these notes as debts his estate would have to pay,. only a short time before his death, in his last sickness.”
Upon these facts, a jury being waived, the Circuit Judge held that the administrator of Graham was liable as endorser, on the promises of payment made, and gave judgment accordingly.
Assuming that Graham was discharged as endorser by reason of the laches of the bank in making demand and having the notes protested for non-payment at maturity, and in failing to give notice, the only question is, Did the endorser promise to pay the notes-under such circumstances as fixed his liability?
In the case of Martin v. Ewing, 2 Hum., 561, it was held that “ if a man, as drawer or endorser of a note or bill of exchange, with the knowledge that proper steps have not been taken to charge him promise to pay, he is bound thereby, and may be declared against as a drawer or endorser, whose lia *444 bility has been legally fixed, because the promise is held to be an admission that the requisites of the law have been complied with, which he will not be permitted afterward to controvert.”
In Spurlock v. Union Bank, 4 Hum., 336, it was said by this court that the law is well understood, that if an endorser, with full and complete knowledge of his discharge, promise to pay, he shall be held to his promise. But this will not be done, if the promise be made under a mistake or misapprehension of the facts, or as to the law of his liability upon them. In other words, if an endorser believe facts to exist which charge him, which do not exist, or if he believes facts, which do exist, charge him, which do not charge him, and in a misapprehension as to the operation of the law upon his case thus supposed, promise to pay, he will not be held to his promise.”
The same rule was laid down and followed in the case of Ford v. Dallam, 3 Col., 67.
It may be safely assumed that in Tennessee the rule prevails that to hold an endorser, who has been •discharged, liable. on his promise to pay, it must appear, not only that the promise. was made with full knowledge of the facts which operated as his discharge, but he must be under no mistake or misapprehension as to the law applicable to the facts.
We have been referred to several authorities which show that the prevailing doctrine • in other States is, that the endorser is liable upon his promise, made under full knowledge of the facts, although he may have promised to pay under a mistake or misappre *445 hension as to the law. We are unable to agree that there is any substantial objection to the rule as it prevails in our State, which calls for a departure from it. When it is sought to hold an endorser liable upon a promise to pay, that rests upon no new consideration, we think it entirely reasonable that he should not be bound, unless it appear that he knew when he made the promise that he was fully discharged by reason of the facts and law applicable to the facts.
In Thornton v. Wynn., 12 Wheat, 187, it was held, that it is now well settled, as a principle of the law merchant, that an unconditional promise by the drawer or endorser of a bill to pay it, after full knowledge of all the circumstances necessary to apprise him of his discharge from his responsibility by the laches of the holder, amounts to an implied waiver of due notice of a demand of the drawer or acceptor, and dispenses with the necessity of proving it.”
The same principle applies to promissory notes. In the case of Leffingwell & Co. v. White, 1 Johns cases, 99, “the endorser, before the note becomes due, stated that the maker had absconded, and that, being secured, he would give a new note, and requested time. The court say the indorser had admitted his responsibility, treated the note as his own, and negotiated for further time for payment, by which conduct he waived the necessity of demand of the maker, and notice to himself.”
But if we were disposed to modify the rule, it would not be necessary for the determination of the *446 present case. It appears clearly from the proof that the endorser had full knowledge of the facts on which his discharge from liability rested. He felt and acknowledged the moral obligation which required him not to rely on his discharge, for the reason that the notes were discounted for his accommodation and benefit, and on his credit. He asked time to collect his means, in order that he might pay these notes, and others similarly situated. Time was given to him, and he paid all but these two; and these he promised to pay regardless of the question whether he was bound in law or not, and this promise he recognized as binding, down to his death.
Upon these facts it cannot be said that the promise was made under any mistake or misapprehension of the law. He promised to pay freely, absolutely, and unconditionally, in the face of his own doubts as to his legal liability. His waiver of demand and notice is not left to implication — he waives it in express terms, and promises to pay without caring to inquire whether demand had been made and notice given, or not.
The present case differs from that of Thornton v. Wynn in this, that in that case the court say: “The declarations of the endorser amounted to an unequivocal admission of the original liability to pay the note, and nothing more.” In the present case the endorser not only admitted unequivocally his original liability on the notes, but he promised absolutely and unconditionally to pay them, regardless of the question of his legal liability, and obtained time to ena *447 ble him to pay them. We think the proof makes it clear that but for his death he would have paid them without raising any question as. to his liability.
We are, therefore, of opinion that the Circuit Judge applied the law correctly in holding the defendant liable, and we affirm his judgment. •